IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| RYAN K. STUMPHAUZER, ESQUIRE § <br> AS RECEIVER FOR LIBERTY § <br> EIGHTH AVENUE, LLC § <br>   § <br> Plaintiff, § <br>   § <br> v. § <br>   § <br> KINGDOM LOGISTICS, LLC; DEF § <br> CAPITAL LLC; LISA MCELHONE § <br>   § <br> Defendants. § | CIVIL ACTION NO. 4:21-CV-_____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Ryan K. Stumphauzer as Receiver for Liberty Eighth Avenue, LLC ("Plaintiff" or "Receiver"), files this Original Complaint against Defendants Kingdom Logistics, LLC ("Kingdom Logistics"), DEF Capital LLC ("DEF Capital") and Lisa McElhone ("McElhone," together with Kingdom Logistics and DEF Capital, the "Defendants") and respectfully states as follows:

### I.
### OVERVIEW

On July 27, 2020, the United States District Court for the Southern District of Florida appointed Ryan K. Stumphauzer as the Receiver for Complete Business Solutions Group, Inc. d/b/a PAR Funding ("Par Funding") and other entities Par Funding improperly used to comingle investor funds. During the pendency of the Receivership Case (as defined herein) and with knowledge of the Receiver's investigation into certain real property, Liberty Eighth Avenue LLC ("Liberty Eighth"), through its principal McElhone, transferred one of those properties located at

4309 Old Decatur Road, Fort Worth Texas to avoid its inclusion in the Receivership Estate.[1] The Receiver initiated this action, seeking to return the fraudulently transferred property to the Receivership Estate to administer for the benefit of the Receivership Creditors.[2]

## II.
## PARTIES

1. The Receiver is the court appointed Receiver for the Receivership Entities[3] in the case styled *SEC v. Complete Business Solutions Group, Inc. d/b/a Par Funding* pending in the United States District Court for the Southern District of Florida, case No. 20-cv-81205-RAR (the "Receivership Case"). The Receiver is a resident and citizen of the State of Florida.

2. Liberty Eighth is a Delaware limited liability company with a registered address of 614 North Dupont Highway, Suite 210 Dover, Delaware 19901. Liberty Eighth is one of the Receivership Entities under the control of the Receiver.

---

[1] As defined in *SEC v. Complete Business Solutions Group, Inc. d/b/a Par Funding* pending in the United States District Court for the Southern District of Florida, case No. 20-cv-81205-RAR.

[2] As defined in *SEC v. Complete Business Solutions Group, Inc. d/b/a Par Funding* pending in the United States District Court for the Southern District of Florida, case No. 20-cv-81205-RAR.

[3] The "Receivership Entities" are Complete Business Solutions Group, Inc. d/b/a Par Funding; Full Spectrum Processing, Inc.; ABetterFinancialPlan.com LLC d/b/a A Better Financial Plan; ABFP Management Company, LLC f/k/a Pillar Life Settlement Management Company, LLC; ABFP Income Fund, LLC; ABFP Income Fund 2, L.P.; United Fidelis Group Corp.; Fidelis Financial Planning LLC; Retirement Evolution Group, LLC; RE Income Fund LLC; RE Income Fund 2 LLC; ABFP Income Fund 3, LLC; ABFP Income Fund 4, LLC; ABFP Income Fund 6, LLC; ABFP Income Fund Parallel LLC; ABFP Income Fund 2 Parallel; ABFP Income Fund 3 Parallel; ABFP Income Fund 4 Parallel; ABFP Income Fund 6 Parallel; ABFP Multi-Strategy Investment Fund LP; ABFP Multi-Strategy Investment Fund 2 LP; MK Corporate Debt Investment Company LLC; Capital Source 2000, Inc.; Fast Advance Funding LLC; Beta Abigail, LLC; New Field Ventures, LLC; Heritage Business Consulting, Inc.; Eagle Six Consultants, Inc.; 20 N. 3rd St. Ltd.; 118 Olive PA LLC; 135-137 N. 3rd St. LLC; 205 B Arch St Management LLC; 242 S. 21st St. LLC; 300 Market St. LLC; 627-629 E. Girard LLC; 715 Sansom St. LLC; 803 S. 4th St. LLC; 861 N. 3rd St. LLC; 915-917 S. 11th LLC; 1250 N. 25th St. LLC; 1427 Melon St. LLC; 1530 Christian St. LLC; 1635 East Passyunk LLC; 1932 Spruce St. LLC; 4633 Walnut St. LLC; 1223 N. 25th St. LLC; Liberty Eighth Avenue LLC; The LME 2017 Family Trust; Blue Valley Holdings, LLC; LWP North LLC; 500 Fairmount Avenue, LLC; Recruiting and Marketing Resources, Inc.; Contract Financing Solutions, Inc.; Stone Harbor Processing LLC; and LM Property Management LLC; and the Receivership also includes the properties located at 568 Ferndale Lane, Haverford PA 19041; 105 Rebecca Court, Paupack, PA 18451; 107 Quayside Dr., Jupiter FL 33477; 2413 Roma Drive, Philadelphia, PA 19145.

3. Kingdom Logistics is a Wyoming limited liability company with a principal address of 8650 Freeport Parkway, Suite 100, Irving, Texas 75063. The citizenship of a limited liability company is also determined by the citizenship of each member of the entity. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008). Kingdom Logistics' members include (i) Anthony Zingarelli ("Zingarelli"), a resident and citizen of Pennsylvania; (ii) Scott Haire, a resident and citizen of Texas, (iii) Clifford Ellery, a resident and citizen of Texas; and (iv) Robert Stout, a resident and citizen of Texas.[4] Kingdom Logistics can be served through its registered agent, Bob Stout, at 8650 Freeport Parkway, Suite 100, Irving, Texas 75063, or wherever he may be found.

4. DEF Capital is a New Jersey limited liability company with a principal address of 3 Marys Way, Jackson, New Jersey 08527. Shia Dembitzer, a resident and citizen of New York, is the sole member of DEF Capital. DEF Capital can be served through its registered agent, Adar Funding LLC at 1820 Swathmore Avenue, Suite 460, Lakewood, New Jersey 08750, or wherever he may be found.

5. McElhone is a natural person and citizen and resident of Pennsylvania. McElhone can be served at 568 Ferndale Lane, Haverford, Pennsylvania 19041, or wherever she may be found. McElhone is a principal for Liberty Eighth and many of the other Receivership Entities. McElhone is also a named defendant in the Receivership Case.

---

[4] The above referenced members of Kingdom Logistics are taken from the Amended and Restated Company Operating Agreement of Kingdom Logistics, LLC which was executed on January 1, 2020.

## III.
## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the Parties are citizens of different States.

7. Venue is proper in this Court under 28 U.S.C. § 1391 because the Property that is the subject of this action is located within Tarrant County, Texas.

8. This Court has personal jurisdiction over Defendants under the general Texas longarm statute, which provides that a nonresident party is amenable to service if he or she engages in business in Texas and the proceeding at issue arises out of the business done in Texas and to which the nonresident is a party. A nonresident defendant engages in business in Texas if, among other things, the nonresident commits a tort in whole or in part in Texas. Defendants' fraudulent transfer of the Property (defined below)—a tort committed wholly or partially in Texas given the location of the Property—subjects them to the jurisdiction of this Court. In addition, Kingdom Logistics' principal place of business is in Irving, Texas. From its principal place of business, Kingdom Logistics—a privately owned resource holding company—operates extensive mining, quarrying, and mineral extraction operations. Kingdom Logistics has sufficient contacts with Texas for this Court to exercise jurisdiction over it. Accordingly, Defendants have sufficient minimum contacts with the forum state that the exercise of jurisdiction over them does not offend traditional notions of fair play and substantial justice.

## IV.
## BACKGROUND FACTS

**A.    The Receivership Case.**

9. On July 24, 2020, the Securities Exchange Commission commenced the Receivership Case asserting in the Complaint that:

> This case concerns a web of unregistered, fraudulent securities offerings that have raised nearly half a billion dollars from an estimated 1,200 investors nationwide. At the center of this web are Lisa McElhone and her husband, convicted felon Joseph W. LaForte, a/k/a Joe Mack, a/k/a Joe Macki, a/k/a Joe McElhone. The McElhone-LaForte duo is in the business of making opportunistic loans – some of which charge more than 400% interest – to small businesses across America. They offer the loans through a company they control, Complete Business Solutions Group, Inc. d/b/a Par Funding ("Par Funding").

10. On July 27, 2020, the Court appointed the Receiver as the Receiver for Par Funding and ten associated entities. As stated in the Amended Order Appointing Receiver dated August 13, 2020 (the "Receivership Order"), the Court appointed the Receiver because:

> the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Defendants ("Receivership Assets") and those assets of the Relief Defendant that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; and/or (c) may otherwise be includable as assets of the estates of the Defendants (collectively, "Recoverable Assets").

11. Under the Receivership Order, the Receiver has the authority to:

> take custody, control and possession of all Receivership Property and records relevant thereto from the Receivership Entities; to sue for and collect, recover, receive, and take into possession from third parties all Receivership Property and records relevant thereto.

12. McElhone functioned as the principal for most of the Receivership Entities prior to the Receiver's appointment. McElhone is personally subject to an asset freeze order in the Receivership Case.

13. At the time of the Receiver's appointment on July 27, 2020, Liberty Eighth was not a Receivership Entity under the control of the Receiver. In October 2020, the Receiver filed a Motion to Expand in the Receivership Case seeking to expand the Receivership to Liberty Eighth,

among other entities, and on December 16, 2020, the Receivership Court granted the Motion to Expand and placed Liberty Eighth, and several other entities, under the control of the Receiver.

**B.    The Receiver's investigation uncovers its alter ego claim against McElhone.**

14.    Through investigation, the Receiver learned that Liberty Eighth is an alter ego of Par Funding and McElhone. McElhone, as a principal for both Par Funding and Liberty Eighth, used her position of control to improperly authorize and transfer investor funds from Par Funding to Liberty Eighth.

15.    Liberty Eighth additionally possess all the hallmarks of an alter ego. Upon information and belief, Liberty Eighth (i) shared common offices, common employees, and common management, board control, and record keeping; (ii) rendered services on behalf of McElhone and Par Funding; (iii) commingled and received or made undocumented transfers of funds to or from McElhone and Par Funding; (iv) the allocation of profits and losses between Liberty Eighth, McElhone, and Par Funding is unclear; and (v) purchased properties with "scheme proceeds."

**C.    The Receiver's investigation uncovers the network of related corporate entities and real estate properties, including the Property.**

16.    Following his appointment in July 2020, the Receiver investigated the records of entities placed into the Receivership. This investigation revealed that Par Funding comingled investor proceeds through a network of related corporate entities such as Liberty Eighth.

17.    McElhone was the sole owner and President of Liberty Eighth since she formed the entity on April 18, 2019. The next day, on April 19, 2019, Liberty Eighth used improperly diverted investor funds to purchase certain real property located at 4309 Old Decatur Road, Fort Worth, Texas, as described in more detail on Exhibit A to this Complaint (the "<u>Property</u>").

18. In addition to Liberty Eighth, the Receiver uncovered a substantial number of real estate properties purchased through single purpose limited liability companies. Par Funding, or affiliated companies, funded the single purpose limited liability companies' purchases with co-mingled investor funds.

19. On or about September 2, 2020, counsel for the Receiver emailed McElhone's counsel to request that they consent to the recording of *lis pendens* against the single purpose entities, including Liberty Eighth. As stated by the Receiver's counsel, the *lis pendens* were intended to "maintain the status quo with respect to these properties" while the Receiver investigated the network of related entities.

20. In response to the Receiver's inquiry, McElhone's counsel refused to consent to the recording of *lis pendens*. Instead, McElhone's counsel stated that the properties the Receiver identified were already subject to an asset freeze order in the Receivership Case.

21. As of these September 2, 2020, communications, McElhone and her counsel were on notice of the Receiver's investigation into the Property.

**D.    The first fraudulent transfer of the Property.**

22. Recognizing the Receiver's investigation into the Property, just four weeks later, Liberty Eighth, through McElhone, transferred the Property to Kingdom Logistics. Liberty Eighth, through McElhone, sold the Property to Kingdom Logistics on September 30, 2020, during the pendency of the Receivership Case and while McElhone was subject to an asset freeze order in the Receivership Case.

23. Jamie McElhone notarized the transfer from Liberty Eighth to Kingdom Logistics. Upon information and belief, Jamie McElhone is McElhone's sister.

24. Liberty Eighth and McElhone transferred the Property to avoid the Receiver assuming control of the Property and to hinder, defraud, or delay administration of the Property to pay the creditors of the Receivership Estate.

25. Liberty Eighth did not receive reasonably equivalent value for the transfer.

26. Liberty Eighth is a single purpose entity whose sole asset was the Property. When Liberty Eighth, through McElhone, fraudulently transferred the Property, Liberty Eighth was left with no assets, thereby rendering it financially vulnerable and imminently insolvent. Without assets, Liberty Eighth had no way to repay outstanding debts, or make its creditors whole.

27. Both Liberty Eighth and Kingdom Logistics are some of the related corporate entities through which Par Funding comingled investor proceeds. Upon information and belief, McElhone is a director, officer, or person in control of Kingdom Logistics as well as Liberty Eighth. As such, Kingdom Logistics is an insider of Liberty Eighth and McElhone.

**E.     The subsequent fraudulent transfer of the Property.**

28. After his appointment as Receiver for Liberty Eighth, the Receiver further learned that the Property was transferred for a second time following the commencement of the Receivership Case.

29. On October 22, 2020, Kingdom Logistics transferred the Property to DEF Capital. Kingdom Logistics transferred the Property to DEF Capital to hinder, defraud, or delay administration of the Property to pay the creditors of the Receivership Estate.

30. Kingdom Logistics did not receive reasonably equivalent value for the transfer.

31. Upon information and belief, DEF Capital, and its principals, are engaged in merchant cash advance businesses. Based upon the relationship Kingdom Logistics, Liberty Eighth, and McElhone the sale to DEF Capital was not an arm's length transaction.

32. Various creditors, including the investors, among others, hold claims against Liberty Eighth and McElhone that arose before or within a reasonable time after the transfer of the Property. The Receiver brings claims for fraudulent transfer, alter ego, and unjust enrichment against the Defendants on behalf of Liberty Eighth's and the Receivership Entities' creditors.

## V.
## CAUSES OF ACTION[5]

**A.    Count One: Actual Fraudulent Transfer under Tex. Bus. & Com. Code § 24.005(a)(1).**

33. The Receiver re-alleges and incorporates by reference all the foregoing paragraphs.

34. Despite having knowledge of the Receivership and the Receiver's investigation into the Property, Liberty Eighth and McElhone transferred the Property to Kingdom Logistics for unfair or no consideration with the actual intent to hinder, delay, and/or defraud the Receiver and the creditors of the Receivership Estate.

35. The transfer exhibits at least the following badges of fraud indicating actual intent under Tex. Bus. & Comm. Code § 24.005(b):

   i. the transfer was to an insider;

   ii. the transfer was concealed;

   iii. before the transfer was made or obligation was incurred, Liberty Eighth and McElhone had been sued or threatened with suit;

   iv. the transfer was of substantially all the Liberty Eighth's assets;

   v. Liberty Eighth and McElhone removed or concealed assets; and

   vi. Liberty Eighth was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

---

[5] To the extent necessary, the Receiver pleads and asserts each of its causes of action in the alternative.

36. The transfer from Liberty Eighth to Kingdom Logistics was not an arm's length transaction.

37. The transfer from Liberty Eighth to Kingdom Logistics was to insiders and for the benefit of insiders.

38. Kingdom Logistics subsequently transferred the Property to DEF Capital for unfair or no consideration.

39. DEF Capital, upon information and belief, was aware of the fraudulent nature of the initial transfer of the Property.

40. As such, the Receiver is entitled to avoid the transfer of the Property from Kingdom Logistics and DEF Capital under Tex. Bus. & Comm. Code §§ 24.008(a)(1) and 24.009(b), and any other relief the circumstances may warrant under Tex. Bus. & Comm. Code § 24.008 or otherwise.

**B.     Count Two: Constructive Fraudulent Transfer under Tex. Bus. & Com. Code §§ 24.005(a)(2) and 24.006.**

41. Liberty Eighth and McElhone transferred the Property to Kingdom Logistics for less than reasonably equivalent value and (i) Liberty Eighth was engaged or about to engage in a business or a transaction for which the remaining assets of Liberty Eighth were unreasonably small in relation to the business or transaction; or (ii) Liberty Eighth and McElhone intended to incur, or believed or reasonably should have believed, Liberty Eighth would incur debts beyond Liberty Eighth's ability to pay as they became due.

42. Liberty Eighth and McElhone transferred the Property to Kingdom Logistics without receiving reasonably equivalent value and Liberty Eighth was insolvent at the time or became insolvent as a result of the transfer of the Property.

43. Kingdom Logistics subsequently transferred the Property to DEF Capital for unfair or no consideration.

44. DEF Capital upon information and belief, was aware of the fraudulent nature of the initial transfer of the Property

45. As such, the Receiver is entitled to avoid the transfer of the Property from Kingdom Logistics and DEF Capital under Tex. Bus. & Comm. Code §§ 24.008(a)(1) and 24.009(b), and any other relief the circumstances may warrant under Tex. Bus. & Comm. Code § 24.008 or otherwise.

### C. Count Three: Alter Ego.

46. The Receiver re-alleges and incorporates by reference all the foregoing paragraphs.

47. Liberty Eighth operated as the alter ego of McElhone and McElhone operated as the alter ego of Liberty Eighth. The Court should treat Liberty Eighth and McElhone as one entity, to prevent any use of the corporate fiction as a tool to inflict fraud on the Receivership Entities' creditors.

48. Liberty Eighth and McElhone exhibit the following elements of alter ego:

   i. Liberty Eighth was organized and operated as a mere tool or business conduit of McElhone;

   ii. Prior to the receivership, McElhone had direct financial and ownership interests in and directly controlled Liberty Eighth;

   iii. There was unity between Liberty Eighth and McElhone such that there was no meaningful separation between the two;

   iv. McElhone did not observe corporate formalities and exercised total control over Liberty Eighth;

   v. McElhone intermingled corporate and individual funds and property; and

      vi. McElhone used Liberty Eighth solely for her personal enrichment, benefit, and to hinder, delay, and/or defraud the Receiver.

49. As such, the Court should pierce the corporate veil of Liberty Eighth and McElhone to hold McElhone liable for the debts and actions of Liberty Eighth and the damages sought in this Complaint.

**D.     Count Four: Conspiracy to Fraudulently Transfer Property.**

50. The Receiver re-alleges and incorporates by reference all the foregoing paragraphs.

51. Defendants have all conspired, agreed, and endeavored in concert to damage the Receivership by fraudulently transferring the Property amongst themselves for unfair or no consideration with the actual intent to hinder, delay, and/or defraud the Receiver and the creditors of the Receivership Estate.

52. Defendants accomplished their conspiracy through their tortious conduct, namely, conducting multiple fraudulent transfers of the Property amongst themselves.

53. Despite having knowledge of the Receivership, Liberty Eighth and McElhone transferred the Property to Kingdom Logistics for unfair or no consideration with the actual intent to hinder, delay, and/or defraud the Receiver and the creditors of the Receivership Estate.

54. Despite having knowledge of the Receivership, Kingdom Logistics transferred the Property to DEF Capital for unfair or no consideration with the actual intent to hinder, delay, and/or defraud the Receiver and the creditors of the Receivership Estate.

55. Upon information and belief, the transfers of the Property were not arm's length transactions.

56. Liberty Eighth, McElhone, and Kingdom Logistics all transferred the Property without receiving reasonably equivalent value in exchange.

57. Liberty Eighth, McElhone, and Kingdom Logistics believed or reasonably should have believed that the transfer would render them unable to pay amounts owed to the Receivership Estate.

58. As a direct and proximate result of Defendants' conspiracy to fraudulently transfer the Property, the Receivership has sustained actual damages, costs, and attorneys' fees in an amount to be proved at trial.

E.   **Count Five: Unjust Enrichment.**

59. The Receiver re-alleges and incorporates by reference all the foregoing paragraphs.

60. In the alternative, the Receiver is entitled to disgorgement of any amounts paid to McElhone, Liberty Eighth, Kingdom Logistics and DEF Capital under the doctrine of unjust enrichment.

61. Defendants received funds that in equity and good conscience belong to the Receivership Estate for ultimate distribution to the defrauded investors.

62. Such funds have unjustly enriched Defendants, and it would be unconscionable for them to retain the funds

63. In order to carry out the duties delegated to him as the receiver, the Receiver seeks complete and exclusive control, possession, and custody of the Property and/or any proceeds received by Defendants.

F.   **Count Six: Constructive Trust.**

64. The Receiver re-alleges and incorporates by reference all the foregoing paragraphs.

65. As set forth in detail above, the Defendants' scheme to defraud Liberty Eighth and its creditors has unjustly enriched the Defendants. Defendants McElhone and Kingdom Logistics have profited from their fraudulent transfers by initiating the transfers of the Property and Defendant DEF Capital has profited from the fraudulent transfers by obtaining title to the Property.

66.     In the exercise of its equitable powers, the Court should impose a constructive trust against Kingdom Logistics and DEF Capital on all property they improperly received from Liberty Eighth as set forth in this Complaint to avoid and remedy the Defendants' unjust enrichment at the expense of Liberty Eighth and its creditors.

## VI.
## PRAYER

For these reasons, the Receiver respectfully requests the Court set this matter for trial and, upon trial, enter judgment in its favor and against Defendants; awarding the Receiver all direct and consequential damages, punitive damages, its costs of suit, including reasonable and necessary attorneys' fees and expenses for the prosecution and appeal, if any, of this matter; pre-judgment and post-judgment interest on all sums awarded in the Court's judgment; and granting the Receiver such other and further relief, general or special, as this Court may deem just and proper.

Respectfully submitted,

*/s/ David J. Drez III*
David J. Drez III
State Bar No. 24007127
david.drez@wickphillips.com
Lauren K. Drawhorn
State Bar No. 24074528
lauren.drawhorn@wickphillips.com
Ian Brinton Hatch
State Bar No. 24123444
Ian.hatch@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone:    (817) 332-7788
Facsimile:     (817) 332-7789

**ATTORNEYS FOR PLAINTIFF,
RYAN K. STUMPHAUZER, AS RECEIVER FOR
LIBERTY EIGHTH AVENUE, LLC**

# EXHIBIT A

EXHIBIT A

LAND DESCRIPTION

Being a tract of land situated in the W.Y. Allen Survey, Abstract No. 15, the J. Bowman Survey, Abstract No. 80, the C.E.P.I. & M. Co. Survey, Abstract No. 383, the J.T. Hobbs Survey, Abstract No. 806, the R. Loyd Survey, Abstract No. 986 and the I. & G.R.R. Co. Survey, Abstract No. 1955, Tarrant County, Texas and being a portion of those certain tracts of land as described in deed to **KEP-RMA, LLC**, as recorded in County Clerk's Document No. D214247043 of the Deed Records of Tarrant County, Texas and being more particularly described by metes and bounds as follows:

**COMMENCING** at a pk nail found in asphalt at the intersection of the approximate centerline of Old Decatur Road (a variable width right-of-way) and the southerly right-of-way line of Northwest Loop 820 (a variable width right-of-way);

**THENCE** South 00 degrees 29 minutes 04 seconds East, departing the southerly right-of-way line of said Northwest Loop 820 and along the approximate centerline of Old Decatur Road, a distance of 1,556.96 feet to a pk nail found in asphalt at the southwesterly corner of Lot 1, Block 1, Quarry Falls Industrial Growth Center No. 1, an addition to the City of Fort Worth as recorded in Document No. D212150170 of the Deed Records of Tarrant County, Texas and also being the northwesterly corner of a 40 foot wide right-of-way dedication to the City of Fort Worth as recorded in Document No. D215258763 of the Deed Records of Tarrant County, Texas;

**THENCE** North 89 degrees 30 minutes 56 seconds East, departing the approximate centerline of said Old Decatur Road and along the southerly line of said Quarry Falls Industrial Growth Center No. 1 and also being the northerly line of said 40 foot wide right-of-way dedication, a distance of 40.00 feet to the **POINT OF BEGINNING**;

**THENCE**, along the southerly and easterly lines of said Lot 1, Block 1, Quarry Falls Industrial Growth Center No. 1 the following courses:

> North 89 degrees 30 minutes 56 seconds East, a distance of 359.67 feet to a 1/2 inch iron rod with cap stamped "RLS" set for a corner;
>
> North 04 degrees 23 minutes 22 seconds West, a distance of 467.57 feet to a 5/8 inch iron rod with cap stamped "RPLS 5539" found for a corner;
>
> North 39 degrees 54 minutes 10 seconds East, a distance of 178.62 feet to a 5/8 inch iron rod with cap stamped "RPLS 5539" found for a corner;
>
> South 55 degrees 32 minutes 21 seconds East, a distance of 846.60 feet to a 5/8 inch iron rod with cap stamped "RPLS 5539" found for a corner;
>
> North 06 degrees 18 minutes 20 seconds East, a distance of 534.66 feet to a 5/8 inch iron rod with cap stamped "RPLS 5539" found at the southwesterly corner of that certain tract

of land as described in deed to the Brown-Lewisville Railroad Family First Limited Partnership as recorded in Document No. 212293503 of the Deed Records of Tarrant County, Texas;

**THENCE** East, along the southerly line of said Brown-Lewisville tract, a distance of 1,137.00 feet to a 5/8 inch iron rod with cap stamped "RPLS 5539" found at the southeasterly corner of said Brown-Lewisville tract and being on a westerly line of that certain tract of land as described in deed to Keystone Equity Partners, as recorded in Volume 15441, Page 37 of the Deed Records of Tarrant County, Texas;

**THENCE**, along the westerly lines of said Keystone Equity Partners tract, the following courses:

> South 04 degrees 47 minutes 35 seconds East, a distance of 308.14 feet to a 1/2 inch iron rod with cap stamped "RLS" found at the beginning of a non-tangent curve to the left, having a central angle of 19 degrees 58 minutes 05 seconds, a radius of 1,326.51 feet and being subtended by a chord bearing South 14 degrees 02 minutes 40 seconds East, 459.96 feet;
>
> Along said curve in a southeasterly direction, an arc distance of 462.30 feet to a 1/2 inch iron rod with cap stamped "RLS" found for a corner at the end of said curve;
>
> South 24 degrees 45 minutes 40 seconds East, a distance of 227.07 feet to a 1/2 inch iron rod with cap stamped "RLS" found for a corner;

**THENCE**, departing the westerly lines of said Keystone Equity Partners tract and across the aforementioned KEP-RMA tract the following courses:

> South 62 degrees 14 minutes 34 seconds West, a distance of 332.36 feet to a 1/2 inch iron rod with "RLS" cap set for a corner;
>
> North 27 degrees 45 minutes 26 seconds West, a distance of 367.37 feet to a 1/2 inch iron rod with "RLS" cap set for a corner;
>
> WEST, a distance of 2,098.38 feet to a point for corner at the southwesterly corner of the aforementioned 40 foot wide right-of-way dedication from which a pk nail found on the approximate centerline of the aforementioned Decatur Road bears West, 40.00 feet;

**THENCE** North 00 degrees 29 minutes 04 seconds West, along the easterly line of said 40 foot wide right-of-way dedication, a distance of 130.59 feet to the **POINT OF BEGINNING** and Containing 1,519,386 Square Feet or 34.880 acres of land, more or less.